IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JEFFREY TEMPLEMAN,                                      No. 6:15-cv-01946-HZ

        Plaintiff,

  v.

CAROLYN COLVIN, Commissioner,                          OPINION & ORDER
Social Security Administration,

        Defendant.

Merrill Schneider
SCHNEIDER KERR LAW OFFICES
P.O. Box 14490
Portland, Oregon 97293

      Attorney for Plaintiff

Billy J. Williams
UNITED STATES ATTORNEY
District of Oregon
Janice E. Hebert
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

1 - OPINION & ORDER

Sarah L. Martin
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

    Attorneys for Defendant

HERNANDEZ, District Judge:

    Plaintiff Jeffrey Templeman brings this action seeking judicial review of the

Commissioner's final decision to deny disability insurance benefits (DIB) and supplemental

security income (SSI). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated

by 42 U.S.C. § 1383(c)(3)). I reverse the Commissioner's decision and remand for further

proceedings.

PROCEDURAL BACKGROUND

    Plaintiff applied for DIB and SSI on May 8, 2012, alleging an onset date of August 26,

2007. Tr. 217-229. His applications were denied initially and on reconsideration. Tr. 82, 84-96,

110, 154-57 (Initial, DIB); Tr. 83, 97-109, 158-61 (Initial, SSI); Tr. 112, 130-45, 163-64

(Reconsideration, DIB); Tr. 113, 114-29, 166-67 (Reconsideration, SSI).

    On January 2, 2014, Plaintiff appeared, with counsel, for a hearing before an

Administrative Law Judge (ALJ). Tr. 42-77. On January 28, 2014, the ALJ found Plaintiff not

disabled. Tr. 22-41. The Appeals Council denied review. Tr. 1-5.

FACTUAL BACKGROUND

    Plaintiff alleges disability based on having diabetes, high blood pressure, high

cholesterol, learning disability, and ADHD. Tr. 282. At the time of the hearing, he was thirty-

2 - OPINION & ORDER

six years old.  Tr. 217 (showing date of birth).  He is a high school graduate, Tr. 47-48, and has

past relevant work experience as a garbage collector and hospital cleaner.  Tr. 34.

SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which . . . has lasted or can be

expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§

423(d)(1)(A), 1382c(3)(a).

Disability claims are evaluated according to a five-step procedure.  See Valentine v.

Comm'r, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step

procedure to determine disability).   The claimant bears the ultimate burden of proving disability.

Id.

In the first step, the Commissioner determines whether a claimant is engaged in

"substantial gainful activity."  If so, the claimant is not disabled.  Bowen v. Yuckert, 482 U.S.

137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b).  In step two, the Commissioner

determines whether the claimant has a "medically severe impairment or combination of

impairments."  Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c).  If not, the

claimant is not disabled.

In step three, the Commissioner determines whether plaintiff's impairments, singly or in

combination, meet or equal "one of a number of listed impairments that the [Commissioner]

acknowledges are so severe as to preclude substantial gainful activity."  Yuckert, 482 U.S. at

141; 20 C.F.R. §§ 404.1520(d), 416.920(d).  If so, the claimant is conclusively presumed

disabled; if not, the Commissioner proceeds to step four.  Yuckert, 482 U.S. at 141.

3 - OPINION & ORDER

In step four, the Commissioner determines whether the claimant, despite any

impairment(s), has the residual functional capacity (RFC) to perform "past relevant work."  20

C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant can, the claimant is not disabled.  If the

claimant cannot perform past relevant work, the burden shifts to the Commissioner.  In step five,

the Commissioner must establish that the claimant can perform other work.  Yuckert, 482 U.S. at

141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f).  If the Commissioner meets his burden

and proves that the claimant is able to perform other work which exists in the national economy,

the claimant is not disabled.  20 C.F.R. §§ 404.1566, 416.966.

THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

activity since his alleged onset date.  Tr. 27.  Next, at step two, the ALJ determined that Plaintiff

has severe impairments of impingement syndrome of the right shoulder, diabetes mellitus,

attention deficit hyperactivity disorder (ADHD), and borderline intellectual functioning.  Id.

However, at step three, the ALJ concluded that these impairments did not meet or equal, either

singly or in combination, a listed impairment.  Tr. 27-29.

At step four, the ALJ concluded that Plaintiff has the RFC to perform medium work as

defined in 20 C.F.R. §§ 404.1567(c), 416.967(c), "meaning he can lift 50 pounds occasionally

and 25 pounds frequently, and stand/walk for approximately six hours in an eight-hour day."  Tr.

29.  Plaintiff can also frequently push or pull with his right upper extremity and can frequently

reach with his right upper extremity.  Id.  He is limited to occupations that do not require

complex written or verbal communication or complex numerical calculations.  Id.  Instruction

should primarily be by demonstration.  Id.  He can understand and carry out simple instructions.

4 - OPINION & ORDER

Id.

With this RFC, the ALJ determined that Plaintiff is unable to perform any of his past relevant work.  Tr. 34.  However, at step five, the ALJ determined that Plaintiff is able to perform jobs that exist in significant numbers in the economy such as laundry laborer and sweeper/cleaner.  Tr. 35.  Thus, the ALJ determined that Plaintiff is not disabled.  Id.

STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole.  Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. (internal quotation marks omitted).  The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision.  Id.; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed."  Vasquez, 572 F.3d at 591 (internal quotation marks and brackets omitted); see also Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

DISCUSSION

Plaintiff contends that the ALJ erred by (1) rejecting several impairments as non-severe at step two; (2) failing to consider Listing 12.05C at step three; (3) improperly rejecting medical opinions; (4) improperly rejecting Plaintiff's subjective limitations testimony as non-credible; (5)

5 - OPINION & ORDER

improperly rejecting lay testimony; and (6) failing to conduct an adequate analysis at steps four

and five.  Defendant concedes that the ALJ erred at step three by not discussing whether Plaintiff

met the criteria for Listing 12.05C.  Defendant further concedes that the ALJ erred at step five by

not fully accounting for at least two medical opinions.  Defendant seeks a remand for additional

proceedings, arguing that the record does not support an award of benefits.  Plaintiff disagrees

and contends that a remand for benefits is appropriate.

       In social security cases, remands may be for additional proceedings or for an award of

benefits.  E.g., Garrison v. Colvin, 759 F.3d 995, 1019 (9th Cir. 2014) (explaining that if

"additional proceedings can remedy defects in the original administrative proceeding, a social

security case should be remanded[,]" but "in appropriate circumstances courts are free to reverse

and remand a determination by the Commissioner with instructions to calculate and award

benefits") (internal quotation marks omitted).  To determine which type of remand is appropriate,

the Ninth Circuit uses a three-part test.  Id. at 1020; see also Treichler v. Comm'r, 775 F.3d 1090,

1100 (2014) ("credit-as-true" rule has three steps).  First, the ALJ must fail to provide legally

sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.

Garrison, 759 F.3d at 1020.  Second, the record must be fully developed and further

administrative proceedings would serve no useful purpose.  Id.  Third, if the case is remanded

and the improperly discredited evidence is credited as true, the ALJ would be required to find the

claimant disabled.  Id.  To remand for an award of benefits, each part must be satisfied.  Id.; see

also Treichler, 775 F.3d at 1101 (when all three elements are met, "a case raises the 'rare

circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule"

of remanding to the agency).  The "ordinary remand rule" is "the proper course" except in rare

6 - OPINION & ORDER

circumstances.  Treichler, 775 F.3d at 1101.

I.  Step Three Listing

       To be disabled under Listing 12.05C, a claimant must show: "(1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22;" (2) a valid verbal, performance, or full scale IQ of 60 to 70; and (3) "a physical or other mental impairment imposing an additional and significant work-related limitation." Kennedy v. Colvin, 738 F.3d 1172, 1176 (9th Cir. 2013); see also Pedro v. Astrue, 849 F. Supp. 2d 1006, 1011 (D. Or. 2011) (summarizing requirements of Listing 12.05C); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C.

       The third element is not at issue here as Defendant acknowledges that the ALJ found other severe impairments at step two.  Defendant argues, however, that there are outstanding issues requiring resolution by the ALJ as to the other two elements.

       A.  Adaptive Functioning

       The first element requires a claimant to show a low level of intellectual functioning and deficits in adaptive functioning before age twenty-two.  Defendant argues that because the record fails to contain sufficient evidence of a lack of adaptive functioning, the ALJ must consider these issues .  Defendant notes that Plaintiff was in special education classes as an adolescent.  But, Defendant argues that establishing adaptive functioning deficits requires Plaintiff to additionally show limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety.  Defendant contends that many of these deficits are not present here.  As a result, Defendant argues that the evidence is not clear whether Plaintiff had deficits in adaptive functioning initially manifesting before age twenty-two.  Consequently, the ALJ should be

allowed to weigh the evidence and make the required factual determination on this issue.

I disagree. In Pedro, Judge Marsh explained that relevant circumstantial evidence to establish adaptive functioning deficits included "attendance in special education classes, dropping out of high school prior to graduation, difficulties in reading, writing, or math, and low skilled work history." Pedro, 849 F. Supp. 2d at 1011-12 (internal quotation marks omitted). There, the defendant argued that because the plaintiff had a driver's license, was able to live independently, handled her own hygiene, and took care of her children, she could not meet the adaptive functioning deficit element of the listing. Id. at 1014. Judge Mash noted that the record showed the plaintiff's attendance in special education classes, struggles in reading and writing, memory problems, and a history of low-skilled work. Id. at 1012. This was sufficient evidence of deficits in adaptive functioning as "the listing does not require more." Id. at 1014. Additionally, the activities noted by the defendant were not necessarily inconsistent with mental retardation as suggested by the defendant. Id. ("courts have held that daily activities such as reading, driving, and cleaning are not necessarily inconsistent with mental retardation").

In a more recent case, Judge Simon reached a similar conclusion. Jones v. Colvin, 149 F. Supp. 3d 1251 (D. Or. 2016). First, he noted that deficits in adaptive functioning refer to a "'failure to meet developmental and sociocultural standards for personal independence and social responsibility.'" Id. at 1257 n.3 (quoting Am. Psych. Ass'n, Diagnostic & Statistical Manual of Mental Disorders 33 (5th ed. 2013)). These deficits "limit functioning in at least one activity of daily life, including communication and social participation in school, work, or other environments." Id. (citing DSM-V 33).

Judge Simon explained that "possessing average living skills and the ability to drive is

not inconsistent with Listing 12.05C." Id. at 1260.  In Jones, the record showed that the plaintiff

attended special education classes, was reading at an eighth grade level at age eighteen, had

significant accommodation at high school, received a modified diploma, took numerous times to

pass her driver's license test, drives only with another adult in the car, and lives with her parents.

Id. at 1260-61.  Based on this, and the other evidence of record establishing that the plaintiff met

the other elements of Listing 12.05C, Judge Simon reversed the ALJ's decision and remanded for

an immediate award of benefits.  Id. at 1262.  No further analysis by the ALJ was required.

Plaintiff's special education classes in high school are relevant to the issue.  Additionally,

a comprehensive psychological examination at age thirteen shows numerous concerns which the

examiner summarized as "a complex pattern of temperamental, cognitive and behavioral

difficulties."  Tr. 556.  Plaintiff was in the borderline range of intellectual skill, he experienced

delays in academic achievement as a result of specific language problems, and he was estimated

to be at a second grade level academically.  Id.; Tr. 545.  As to adaptive functioning, he had

elevated behavioral scales of hostility, delinquency, aggression, and hyperactivity.  Tr. 547-48.

He had a lack of social skills.  Id. at 548-49.  On the basis of his parents' responses to testing

questions, the evaluator concluded that Plaintiff presented adaptive behavior in communication

equivalent to seven-year old, in daily living skills equivalent to a six-year old, and in

socialization skills equivalent to a five-year old..  Tr. 549.

Further, Plaintiff's teachers reported to the evaluator that he was disorganized, could

follow simple instructions but still appeared lost and confused, and that he learned and worked

very slowly.  Id.  He had a limited vocabulary and poor oral language skills.  Id.  All of his

teachers rated him as below average in reading and math achievement.  Id.

With this evidence in the record, Plaintiff establishes deficits in adaptive functioning manifesting before age twenty-two. His special education classes and demonstrated problems at age thirteen and earlier show a failure to meet developmental and sociocultural standards for personal responsibility with limited functioning in school, communications, reading, math, and social settings. Because no other interpretation of the record is possible, there is no need for the ALJ to consider this evidence in the first instance.

B. Verbal IQ Score

As to the second element required to establish Listing 12.05C, there is no dispute that in 2006, in testing administered by psychologist Lane. B. Andelin, Psy.D., Plaintiff had a Verbal IQ score of 70, within the range required to establish the second element of Listing 12.05C. Tr. 363. Defendant argues that the record raises questions about the score's validity, requiring analysis by the ALJ. In support, Defendant cites to Dr. Andelin's comments that questioned Plaintiff's effort on testing and whether Plaintiff was motivated by a need to appear more impaired than he actually is. Tr. 361 (introductory comments by Dr. Andelin stating that Plaintiff was cooperative but "there is some question as to how much effort he put into the testing, and how accurately he represented his abilities"); Tr. 365 (stating in summary of intellectual functioning section, that "some question is raised as to the accuracy of his response patterns in intellectual testimony. Some of this may be based on his belief regarding his level of impairment, or upon a possible need or interest in showing himself as limited and delayed"); Tr. 369 (in treatment issues and functioning section, stating that "the question as to how accurately he participated in the testing" was of "minor note").

Defendant also notes that there are conflicting IQ scores in the record. Test results from

when Plaintiff was six years old showed a Verbal IQ score of 88. Tr. 550. In another exam, administered when Plaintiff was twelve years old, the Verbal IQ score was 77. Id. Defendant argues that the ALJ should resolve these conflicts in the evidence and make a finding as to whether Plaintiff's IQ meets the second element of Listing 12.05C.

Plaintiff responds that Dr. Andelin stated that his own observation about Plaintiff's effort on testing was "not obvious or conclusive[.]" Tr. 369. Dr. Andelin also offered alternative theories for the test results. Id. (explaining that Plaintiff "may have some thought of secondary gain from appearing as more impaired than actual" or that "[i]t may be that he has the belief that he will not score well and that he does not know the answer to more than a few questions; hence he will give up without trying when items appear to be more advanced[.]"). Finally, Plaintiff argues that because Dr. Andelin noted several mental health impairments and serious limitations, the validity of the Verbal IQ score of 70 should be upheld.

I agree with Defendant. There are varying IQ scores in the record. The Verbal IQ of 70 is at the upper limit for meeting the second element of Listing 12.05C. While Dr. Andelin does not conclude that the IQ scores are invalid, he nonetheless raises concerns about their validity while offering more than one explanation for his concern. As a result, I cannot conclude that the record is fully developed and that administrative proceedings would serve no useful purpose. On the contrary, further administrative proceedings would provide analysis and clarification of the IQ scores in the record. See Thresher v. Astrue, 283 F. App'x 473, 475 (9th Cir. 2008) (noting that an ALJ may find an IQ score to be invalid); Jones, 149 F. Supp. 3d at 1258 (explaining that the Ninth Circuit has "'never decided what information is appropriately looked to in deciding [the] validity' of IQ scores" but that "[d]ecisions from other courts indicate that the ALJ may rely

on external evidence of a score's invalidity, such as improper testing conditions or a claimant's participation in activities inconsistent with the IQ score.") (quoting <u>Thresher</u>, 283 F. App'x at 475 n. 6).

## II.  Medical Opinions

Defendant concedes that the ALJ failed to fully account for two medical opinions.  First, although the ALJ gave significant weight to Dr. Andelin's opinion, the ALJ failed to discuss Dr. Andelin's opinion that Plaintiff had notable deficits in intellectual functioning, had memory lapses, needed help to complete a questionnaire, and failed to understand basic test questions. Second, Defendant agrees that while the ALJ gave only little weight to the opinion of treating physician Dr. Aaron Holmes, M.D., the ALJ's reasoning in support of that determination was not supported by substantial evidence.

While conceding error, Defendant argues that remand for further analysis of the record by the ALJ is required.  Defendant contends there are conflicts in the record that the ALJ must analyze in the first instance.  As an example, Defendant contends that in contrast with Dr. Holmes's opinion that Plaintiff would have a difficulty holding down a job long-term, examining psychologist Tanya Colledge, Psy.D., concluded that he was capable of leading an independent life with minimal supervision and could carry out basic and multi-step instructions.  Tr. 396. And, treating source Dr. Michael Harris, D.O., assigned Global Assessment of Functioning (GAF) scores in the 60s, indicating only mild impairment of mental functioning.  Tr. 372-81.

As to the performance of simple tasks, Defendant argues that it is unclear whether Dr. Holmes's and Dr. Andelin's opinions that Plaintiff would have difficulty performing some simple tasks would preclude all employment.  Defendant contends that the performance of one- and two-

step tasks may be possible.

In response, Plaintiff argues that the record establishes that Plaintiff's limitations as assessed by Dr. Holmes cannot be accommodated in a competitive work environment and further, that Dr. Holmes's opinion is entitled to controlling weight as the uncontradicted opinion of a treating physician.  Plaintiff also argues because Defendant fails to provide any reasoning to discount Dr. Andelin's opinion, further proceedings would not be useful because when Dr. Andelin's opinion is properly credited, it establishes disability for Plaintiff.

Dr. Andelin evaluated Plaintiff in July 2006.  Tr. 358-71.  He administered several psychological  tests, conducted a clinical interview, and performed a mental status assessment. Tr. 358.  Dr. Andelin opined that Plaintiff had "notable deficits in academic abilities and intellectual functioning" with memory skills showing significant lapses and reading recognition, mathematical skills, and spelling at the second- to third-grade level.  Tr. 368.  Fetal alcohol syndrome was a possible cause of some of these limitations, with symptoms including lowered intellectual functioning, hyperactivity/attention-deficit disorder, memory problems, distractability, impulsivity, learning disabilities, and more.  Tr. 369.  Plaintiff showed mixed signs of depressive symptoms and feelings, and had personality and "related issues" such as anger issues, low self-esteem, and other difficulties.  Tr. 370.

In the final section addressing employment, Dr. Andelin noted that Plaintiff had shown the ability to work in certain venues and appeared to possess adequate social skills to get along "reasonably well" with co-workers.  Tr. 371.  Dr. Andelin also explained that "[o]n-the-job training may take a little longer for [Plaintiff] due to apparent memory difficulties, as mentioned. Employment that relies on abilities with reading, comprehension, or mathematical calculations

above approximately third grade level, may be difficult and prone for frustration and a lack of effectiveness on his part." Id.

Contrary to Plaintiff's suggestion, Dr. Andelin's assessment does not expressly assert that Plaintiff cannot work. While he notes problems with memory and on-the-job training, and indicates that limitations consistent with his third-grade reading and math levels are appropriate, the record does not contain vocational evidence directly addressing these limitations. Thus, further proceedings would be useful.

Dr. Holmes established a treating relationship with Plaintiff in July 2012. Tr. 468. The record reveals seven office visits by Plaintiff to Dr. Holmes between July 5, 2012 and November 1, 2012. Tr. 446-73. At the first visit, on July 5, 2012, Dr. Holmes opined that Plaintiff had ADHD. Tr. 472. In discussing that condition, he stated that Plaintiff seemed "as though he would not have much luck holding down a job." Id. He noted that Plaintiff's prior mental evaluation showed his IQ to be in the borderline range with significant problems with memory skills at that point. Id. He wrote: "I certainly think that he would have difficulty maintaining employment on an ongoing basis in a competitive work environment[.]" Id.

The next time Dr. Holmes referred to Plaintiff's mental functioning was September 10, 2012. Tr. 453. In his chart notes from that visit, Dr. Holmes expressly referred to Dr. Andelin's 2006 psychological evaluation and remarked on a few of its findings, including memory problems consistent with an organic brain problem such as fetal alcohol syndrome. Id. He also wrote that now that he himself had seen Plaintiff on a number of visits, he was "impressed by his severe disorganization and memory problems." Id. He remarked that Plaintiff had difficulty following fairly simple directions with regard to his medical care and remembering to complete

tasks.  Id.  Plaintiff needed Dr. Holmes's help in completing disability forms.  Id.  Further, Dr.

Holmes opined that these symptoms had likely been "pervasive for some period of time."  Id.

Echoing Dr. Andelin's finding of organic brain disease mostly likely from fetal alcohol

syndrome, Dr. Holmes indicated that this had been a persistent disorder for at least ten years, if

not longer.  Tr. 454.  He believed that Plaintiff had previously relied on significant amounts of

support from his adoptive mother and his wife to maintain a somewhat normal level of function.

Id.

        Consistent with the remarks in the September 10, 2012 chart notes, Dr. Holmes wrote a

letter to Social Security Disability, noting his treatment relationship and offering his support for

Plaintiff's disability application.  Tr. 455.  He stated that Plaintiff had three conditions that

limited his ability to work, with two of them present for ten years or more.  Id.  The first of these

two was his organic mood disorder with "some coexistent organic brain disorder most likely as

well."  Tr. 455.  He noted Plaintiff's trouble with long- and short-term memory which Dr. Holmes

had observed himself.  Id.  He stated that Plaintiff had barely been able to maintain employment

for a brief period of time with a large amount of support from his mother and his wife.  Id.  With

a decrease in external support, Plaintiff had been unable to support any type of meaningful

employment.  Id.

        Next, Dr. Holmes noted Plaintiff's borderline intellectual function.  Id.  Dr. Holmes had

observed Plaintiff's difficulty remembering simple instructions and difficulty completing simple

tasks such as filling out paperwork.  Even with help from his adoptive father, Plaintiff had

difficulty completing simple forms.  Id.

        If the treating physician's medical opinion is supported by medically acceptable

15 - OPINION & ORDER

diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001). On the contrary, if there is substantial evidence which contradicts the opinion of the treating provider, that opinion is no longer entitled to controlling weight. Orn, 495 F.3d at 632.

Here, other substantial evidence in the record contradicts some of Dr. Holmes's opinions. For instance, Dr. Andelin, on whose report Dr. Holmes relied for diagnoses and test results, did not opine, as noted above, that Plaintiff was incapable of working. While he noted limitations, he expressly stated that Plaintiff had shown the ability to work and get along with others. Dr. Colledge, as Defendant notes, also endorsed Plaintiff's ability to work. Tr. 396. According to her November 2010 evaluation, Plaintiff "appears capable of completing some work tasks." Id. She remarked that he had performed better on manual labor jobs and those requiring repetition. Id. She noted that he had been able to maintain gainful employment during several periods. Id. She remarked on his impaired capacity to tolerate work stress. Id. She further opined that he was able to remember and carry out basic as well as multi-step instructions. Id. And, non-examining psychologist Michael Dennis, Ph.D. opined in August 2012, that Plaintiff was capable of understanding and remembering one-and two-step instructions but would be incapable of understanding and remembering more complex instructions. Tr. 106.

Given the substantial evidence in the record which is inconsistent with Dr. Holmes's opinion, his opinion is not entitled to controlling weight. Moreover, as Defendant contends, that same evidence shows that further development of the record would be useful as the ALJ is the appropriate trier of fact to examine and analyze the evidence in the first instance.

16 - OPINION & ORDER

III.  Remaining Issues

Although Plaintiff raised other alleged errors by the ALJ, I agree with Defendant that these issues should be reexamined upon remand.  If the evidence supports a determination that Plaintiff's Verbal IQ score of 70 is valid, then there is no need to proceed beyond step three in the sequential analysis.  Thus, I decline to address any other alleged step four or step five errors.  As to the step two errors, because the case is remanded for further proceedings, the ALJ will again review the medical evidence and assess the severity of Plaintiff's impairments.

CONCLUSION

The Commissioner's decision is reversed and remanded for further proceedings.

IT IS SO ORDERED.

Dated this _____ day of _____ , 2016

_____
Marco A. Hernandez
United States District Judge

17 - OPINION & ORDER